**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

POULIN VENTURES, LLC,
a New Mexico Corporation,

     Plaintiff,

v.                                                        No. 1:19-cv-01031-JCH-GBW

MONEYBUNNY CO., a Wyoming
Corporation, and LAUREN LEE
MITCHELL, also known as LAUREN
SCOTT, an individual,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff Poulin Ventures, LLC's Motion for Default Judgment (ECF No. 15), Defendants MoneyBunny Co. LLC and Lauren Lee Mitchell a.k.a Lauren Scott's Motion to Set Aside Clerk's Entry of Default (ECF No. 19), and Plaintiff's Motion for Leave to File Surreply (ECF No. 28).

After carefully considering the motions, the Court **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction over Defendant MoneyBunny, but **RESERVES RULING** as to whether personal jurisdiction exists over Defendant Mitchell. The Court further **VACATES** the Clerk's Entry of Default against Defendants, **DENIES without prejudice** Plaintiff's motion for default judgment and **DENIES** Plaintiff's motion for leave to file a surreply.

I.    **Background**

     **A. Factual Background**

Plaintiff is a New Mexico limited liability company headquartered in Albuquerque. It provides health services and products, including health and fitness programs and goods. It also provides fashion items such as clothing and sunglasses. It owns protectable interests in the trademarks "LadyBoss" and "LadyBoss Swag" (collectively "LadyBoss Marks") for apparel, eyewear, and retail services. Plaintiff's LadyBoss Swag design mark is registered with the United States Patent and Trade Office (USPTO) for "retail store services featuring a variety of goods in the field of apparel." Compl. ¶ 11, at 4, ECF No. 1. It has been using the LadyBoss Swag mark in commerce singe at least August 8, 2016. Its LadyBoss word mark is the subject of a pending application for sunglasses and Plaintiff has been using the LadyBoss mark in commerce for sunglasses since August 29, 2016. Plaintiff sells its LadyBoss-branded products on its website, www.ladyboss.com. *Inc.* magazine listed LadyBoss as number four in its list of "2019 Inc. 5000: The Most Successful Companies in America," which is the magazine's annual guide to the 5,000 fastest growing private companies in America. Compl. ¶ 15 at 5. Plaintiff has about 222,000 Instagram followers, 816,000 Facebook followers, and 32,000 YouTube subscribers.

Plaintiff alleges that Defendant MoneyBunny Co. and its founder and owner Lauren Mitchell have been offering and selling anti-blue light glasses using a mark identical to Plaintiff's. MoneyBunny is a limited liability company registered in Wyoming with its principal place of business in California. Ms. Mitchell is a California resident. Ms. Mitchell submitted an affidavit stating that she is "the managing member of both MoneyBunny Co., LLC and LadyBoss Glasses, LLC," and that LadyBoss Glasses and MoneyBunny are "affiliate[s]." Mitchell Aff. ¶¶ 3, 5 at 1, ECF No. 19-1.

Ms. Mitchell "does business as" MoneyBunny, and, as such, both Ms. Mitchell and MoneyBunny are "engaged in the business of selling eyeglasses, specifically anti-blue light

glass, and h[ave] been offering and selling those glasses using a mark identical to Poulin's LADYBOSS mark in connection with its 'LADYBOSS' glasses." Compl. ¶ 10 at 3-4. According to Plaintiff, Defendants sell their LadyBoss-branded products on their website, www.ladybossglasses.com and promote their products on Facebook and Instagram. Ms. Mitchell explained in her affidavit that LadyBoss Glasses "operates a website that sells products that ship both nationally and internationally." Mitchell Aff. ¶ 3.

The parties have some litigation history. Ms. Mitchell previously filed a federal trademark application for the mark "LADYBOSS GLASSES" for the retail sale of sunglasses. Mitchell Aff. ¶ 13. In September 2018, she received a response from the USPTO that a "trademark attorney ha[d] searched the Office's database of registered and pending marks and ha[d] found no conflicting marks that would bar registration," under certain federal trademark laws. *Id*. ¶ 14. Plaintiff opposed Defendants' application before the Trademark Trial and Appeal Board (TTPB), which hears trademark registration disputes. Plaintiff's opposition notice clearly disclosed Plaintiff's New Mexico address. MoneyBunny did not answer Plaintiff's opposition, so in February 2019, the TTBP entered default against MoneyBunny and ordered it to show cause why default judgment should not be entered. In April 2019, MoneyBunny did eventually respond and the default was lifted.

In the summer of 2019, Plaintiff's Chief Executive Officer, Brandon Poulin, sent Defendants a cease-and-desist letter demanding that they stop using the LadyBoss mark because it constituted infringement. Defendants did not respond. Mr. Poulin then contacted Defendants by writing MoneyBunny through Facebook messenger and a telephone call. During a July 2019 call, Ms. Mitchell admitted to Mr. Poulin "that she knew of Poulin's products, services, and LADYBOSS Marks before beginning her and her company Moneybunny Co.'s use of the LADYBOSS mark." Poulin Aff. ¶ 3, ECF No. 15-3.

**B. Procedural History**

In November 2019, Plaintiff successfully moved to stay TTPB proceedings to pursue this lawsuit. On November 6, 2019, Plaintiff filed a complaint in this Court alleging the following claims against Defendants: a violation of the Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a) for trademark infringement (Count 1); a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) for false designation of origin (Count 2); a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c) for trademark dilution (Count 3); a violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1 *et seq* (Count 4); a violation of New Mexico's Trademark Act, N.M. Stat. Ann. § 57-3B-15 for trademark dilution (Count 5); and a violation of common law for trademark infringement (Count 6).

Proofs of service filed by Plaintiff show that the complaint was served on MoneyBunny's registered agent in Wyoming on November 12, 2019 and on Ms. Mitchell personally on November 20, 2019. On December 30, 2019, the Clerk of Court, in response to Plaintiff's request for entry of default, filed the Clerk's Entry of Default against Defendants for their failure to plead, appear, or otherwise defend in this case.

On February 7, 2020, Plaintiff moved to secure a default judgment, stating that Defendants were defaulting parties who had failed to appear. As part of that motion, Plaintiff also provided evidence of what it described as an "interactive" website and social media that Defendants use to promote and sell their products. ECF No. 15 at 16. According to Mr. Poulin's affidavit, he visited Defendants' website, www.ladybossglassess.com, and his affidavit describes the website's workings. He stated that the website allows a user to select New Mexico as a ship-to state. If a user selects New Mexico, then the website calculates shipping and tax costs. In addition, the website allows consumers, including those in New Mexico, to subscribe to Defendants' promotions and giveaways by joining Defendants' VIP email list. Consumers can

4

communicate with Defendants via their website, or through Defendants' social media (Facebook and Instagram) accounts. Mr. Poulin also attached various screenshots of Defendants' website, social media accounts, and screenshot images of Defendants' glasses.

On February 21, 2020, fourteen days after Plaintiff filed its default judgment motion, counsel for Defendants entered a special entry of appearance for the "purpose of contesting lack of personal jurisdiction." ECF No. 16. The parties stipulated to an extended deadline of March 9, 2020 for Defendants to respond to Plaintiff's default judgment motion. On that day, Defendants responded in opposition to entry of a default judgment. Rather than answering the complaint, they also separately moved to set aside the entry of default, citing Federal Rules of Civil Procedure 12(b)(2) and 55.

Concerning their Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Defendants submitted Ms. Mitchell's affidavit. Ms. Mitchell denied knowing of "Poulin['s] … specific claims of trademark infringement." Mitchell Aff. ¶ 17. She attested, and Plaintiff does not dispute, that she has no personal physical presence in New Mexico. Nor does Plaintiff dispute that Defendants are not registered to do business in New Mexico; do not own or have any buildings, land, addresses, telephone listings, or bank accounts in New Mexico; have no employee or agents in New Mexico; send no employees to New Mexico; file no tax returns, and direct no advertising specifically to New Mexico.

Regarding LadyBoss Glasses' website operation, Ms. Mitchell stated that the website "sells products that ship both nationally and internationally." *Id*. ¶ 11. LadyBoss Glasses advertises globally "but does not specifically advertise in New Mexico," and LadyBoss Glasses has "sold approximately 100 glasses to persons with New Mexico addresses," which amounts to "less than 0.5% of sales." *Id*. ¶¶ 10, 12. Defendants claim, among other things, that the Court

lacks personal jurisdiction over them because their contacts with the forum state, New Mexico, are insufficient and that it would be unfair for them to litigate in New Mexico.

The Court proceeds to analyze their jurisdictional argument.

## II.     Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

### A. Standard of Review

Plaintiff bears the burden to establish that personal jurisdiction exists over Defendants. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). Where, as here, no evidentiary hearing is held, a plaintiff only needs to make a prima facie showing that personal jurisdiction exists. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006). Under the prima facie standard, "the plaintiff may defeat a motion to dismiss by presenting evidence (either uncontested allegations in its complaint or other materials, or an affidavit or declaration) 'that if true would support jurisdiction over the defendant.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). If the parties present conflicting affidavits or materials, then the Court must accept Plaintiff's properly documented evidentiary proffers as true and construe them in the light most favorable to Plaintiff. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Thus, the Court will accept as true any facts in the Defendants' evidentiary submissions that do not conflict with anything in the record, either by way of Plaintiff's complaint or other submissions. Where conflicts do exist, they are resolved in Plaintiff's favor.

### B. Personal Jurisdiction Framework

The personal jurisdiction requirement flows from the Due Process Clause, which protects an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum. *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210-11 (10th Cir. 2000). This

case involves claims under both federal law (the Lanham Act) and state law, so jurisdiction rests on a federal question, 28 U.S.C. § 1331, and supplemental jurisdiction, 28 U.S.C. § 1367. To determine whether a court may exercise jurisdiction over a defendant in a federal question case, the court must examine (1) whether the federal statute confers jurisdiction by authorizing service of process on the defendant, and (2) whether the exercise of jurisdiction would violate due process. *See Peay*, 205 F.3d at 1209. Neither party contends that the Lanham Act provides for nationwide service of process. Rather, both parties agree the Court must apply the law of the state in which it sits, *i.e.* New Mexico law. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (holding that where neither federal act provided for nationwide service of process, Federal Rule of Civil Procedure 4(k)(1)(A) commands court to apply law of state in which district court sits).

New Mexico's long-arm statute uses a three-step test to decide if personal jurisdiction exists: (1) the defendant's act must be one enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) there must be sufficient minimum contacts with New Mexico to satisfy due process. *See Tercero v. Roman Catholic Diocese of Norwich, Connecticut*, 2002-NMSC-018, ¶ 8, 132 N.M. 312, 316, 48 P.3d 50, 54. The reach of New Mexico's long-arm statute extends personal jurisdiction as far as constitutionally permissible. *Id.* ¶ 6. The constitutional standard requires that an out-of-state defendant "both 'purposefully established minimum contacts within the forum State" and that the 'assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1322 (10th Cir. 2019) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). The defendant's conduct and connection with the forum state must be such that it would reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The minimum contact requirement may be satisfied in two ways – through general or specific jurisdiction. *See Trujillo v. Williams*, 465 F.3d 1210, 1218 & n.7 (10th Cir. 2006). Plaintiff does not contend that general jurisdiction exists. *See* ECF No. 22 at 10. Accordingly, the Court only examines whether, as the parties frame it, the Court may exercise specific jurisdiction over Defendants. A court may exercise specific jurisdiction if a defendant has purposefully directed his or her activities at the residents of the forum and the lawsuit results from injuries arising out of or relating to those activities. *Burger King*, 471 U.S. at 472; *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 909 n.19 (10th Cir. 2017) ("The purposeful direction and 'arising out of' requirements together comprise the minimum contacts analysis.") Not just any contact with the resident of a forum will establish minimum contacts with that forum; rather, the court must look at whether there is an act in which the defendant purposefully availed itself of the privileges of conducting activities within the forum state, thus invoking the benefits and protections of the state's laws. *See Trujillo*, 465 F.3d at 1219 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). A single act can support jurisdiction, so long as it creates a substantial connection to the forum. *Burger King*, 471 U.S. at 475 n.18.

If the plaintiff carries its burden of proof to show that the defendant has minimum contacts with the forum state, then the court next asks if the defendant "has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *C5 Med. Werks.*, 937 F.3d at 1323 (quoting *Old Republic*, 877 F.3d at 904). The district court examines unreasonableness by considering "(1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *XMission,* 955 F.3d at 840 (quoting *Old Republic*, 877 F.3d at 909).

### C. Personal Jurisdiction over MoneyBunny

### i. Purposeful Availment

The Tenth Circuit has described different "purposeful direction frameworks" to analyze minimum contacts. *Old Republic*, 877 F.3d at 905, 909. Both parties cite to and rely on the "harmful effects" framework predicated on a defendant's "harmful effects in the forum state." *Id.* at 905.[1] Plaintiff relies on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), a case "which addressed what it means to expressly aim action at a specific State." *XMission, L.C.*, 955 F.3d at 841. In *Calder*, actress Shirley Jones filed a libel suit in a California state court against a Florida-based *National Enquirer* reporter and editor. The Supreme Court held that the California court could exercise specific jurisdiction over the Florida defendants because their "intentional, and allegedly tortious, actions were expressly aimed at California." *Calder*, 465 U.S. at 789. The Court identified the following contacts with California: nearly 600,000 copies were distributed there, "[t]he article was drawn from California sources, and the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California," *id.* at 785, 788-89, thereby making the story "forum-focused" in California. *Walden v. Fiore*, 571 U.S. 277, 290 (2014).

The Tenth Circuit distilled the "*Calder* effects test" down to three requirements: "(a) an intentional action … , that was (b) expressly aimed at the forum state …, with (c) knowledge that the brunt of the injury would be felt in the forum state." *Old Republic*, 877 F.3d at 907 (quoting *Dudnikov*, 514 F.3d at 1072) (alterations in original). In *Old Republic*, the Tenth Circuit held that

---

[1] Defendants cite a framework for examining whether a foreign corporation's contacts with a forum state are "continuous and systematic." *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996). However, *Trierweiler* proposes a test for general, not specific, jurisdiction. *See id.* Because Plaintiff has conceded that general jurisdiction does not exist, the Court does not address or apply the *Trierweiler* framework.

specific jurisdiction did not exist over an Alabama airplane engine manufacturer that published faulty information on its online service manuals and website bulletins that were accessible to a Colorado airplane mechanic. 877 F.3d at 900. The mechanic who subscribed to the service manuals consulted them and defendant's online bulletins in repairing an airplane, both of which contained defective information, leading to the airplane's crash. *Id*. at 901-902. The district court granted the defendant's Rule 12(b)(2) motion and the Tenth Circuit affirmed. *Id*. at 902, 918. The defendant's "mere awareness" that Colorado residents would subscribe to its online service manuals (which had become freely available to the public at the time of the faulty repair) and that those manuals could lead to an injury was insufficient to establish jurisdiction. *Id*. at 917 (stating that "under *Calder* the mere foreseeability of causing an injury in the forum state is, standing alone, insufficient to warrant," jurisdiction) (quoting *Dudnikov*, 514 F.3d at 1077). The court described the defendant's internet activities as akin to an online poster who does not subject itself to personal jurisdiction by "merely posting information on the internet" that is accessible to forum residents. *Id*. (quoting *Shrader*, 633 F.3d at 1244).

In contrast, in *Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2010), the Seventh Circuit held that a New Mexico cigarette e-seller could be sued in Illinois because of its internet transactions with a single Illinois resident. The defendant was "not incorporated or organized under Illinois law, it [was] not registered to do business in Illinois, it d[id] not have any offices or employees in Illinois, it d[id] not bank in Illinois, and it ha[d] not advertised in print media in Illinois." *Id*. at 756. Only a single Illinois resident had purchased over 300 packs of the cigarettes over two years. *Id*. at 755. While acknowledging that "a website that provides only information does not create the minimum contacts necessary to establish personal jurisdiction over a defendant in a particular state," the Seventh Circuit held that Illinois courts could exercise specific jurisdiction over the defendant. *Id*. at 759. The court identified the following internet-

10

based contacts: the defendant "maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts," *id*. at 757-58, and "[a]fter the customers made their purchases online, [the defendant] shipped the cigarettes to their various destinations." *Id.* at 758.

Before applying these general principles to the case at hand, the Court notes that, concerning a defendant's internet activity, the *Calder* test applies to specific jurisdiction cases involving internet content. *See Old Republic*, 877 F.3d at 905. "[I]t is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." *XMission, L.C.*, 955 F.3d at 844-45. "In particular," courts must "examine whether the defendant deliberately directed its message at an audience in the forum state and … intended its online content to create effects specifically in the forum state." *Id*. at 845; *see id*. at 843 ("this court … requires a particular focus by the defendant on the forum State to satisfy the purposeful-direction requirement.") "Accordingly, [t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state." *Old Republic*, 877 F.3d at 908 (quotation marks omitted) (alteration in original).

The Court holds that Plaintiff has made a prima facie showing that MoneyBunny's activities demonstrate purposeful direction at New Mexico, the forum state. First, although Ms. Mitchell's affidavit vaguely describes MoneyBunny and LadyBoss Glasses as "affiliate[s]," Mitchell Aff. ¶ 5, Plaintiff submits through its evidentiary proffers (Mr. Poulin's affidavit and screen shots of the LadyBoss website), that MoneyBunny does e-commerce as LadyBoss. Purposeful availment may be shown where an out-of-state defendant causes its product to be

distributed in the forum state. *See*, *e.g.*, *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774-75 (1984). MoneyBunny has caused its products to be sold in New Mexico using a website that can be characterized as interactive. The interactive website for the sale of its products allows a user to select New Mexico as a ship-to destination from which the customer may choose. MoneyBunny's website arranges for the sale of its products by particularizing shipping and tax costs associated with the sale of products to New Mexico. After arranging the sale, MoneyBunny then ships its products to New Mexico customers. MoneyBunny admittedly sold about 100 glasses to New Mexico residents. These contacts are enough to find personal availment on MoneyBunny's part. *See Hemi*, 622 F.3d at 755, 757–58; *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 166 (2d Cir. 2010) (jurisdiction in New York over California defendant proper because the defendant "operated a website which offered [infringing handbags] for sale to New York consumers, permitted New York consumers to purchase such bags, and facilitated the shipment of those bags into New York …."); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003) ("If a defendant web site operator … knowingly conducts business with forum state residents via the site, then the 'purposeful availment' requirement is satisfied.").[2]

MoneyBunny claims that it did not aim the bulk of its activities at New Mexico because it sold only 100 glasses and earned less than .5% of its sales in the forum. However, even a single sale of a product in the forum state can in some instances support jurisdiction. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957) (holding that an out-of-state insurer who sold only

---

[2] Plaintiff also seems to claim that Defendants have minimum contacts with New Mexico through their website because it allows consumers to subscribe to promotions and giveaways by joining an email list and, further, consumers can communicate with Defendants via social media. However, Plaintiff fails to explain how these activities were targeted at New Mexico residents as opposed to residents of any other state. These contacts therefore do not show purposeful availment.

a single policy within the state is subject to personal jurisdiction with respect to claim for relief related to that policy). Despite a purported small volume of sales in New Mexico, the fact remains that MoneyBunny persistently sold its products to forum residents by maintenance of a website designed to engage in commerce, and its internet activities in New Mexico are connected to its sales in the forum. *Cf. Toys "R" Us,* 318 F.3d at 454 (Spanish company's interactive website did not subject it to personal jurisdiction in New Jersey where the defendant's merchandise could only be mailed to a Spanish address and the defendant's only two sales in the forum state were initiated by the plaintiff).

MoneyBunny's knowing interaction with New Mexico residents distinguishes it from a defendant who merely posts information on the internet that is accessible to forum residents, *see, e.g., A Corp. v. All American Plumbing, Inc.,* 812 F.3d 54, 60 (1st Cir. 2016) (concluding that Arizona defendant's website displaying an infringing trademark did not subject it to jurisdiction in Massachusetts where the website "function[ed] … like a digital billboard, passively advertising the business and offering an email address, fax and phone number," and the defendant's only contact with Massachusetts was the accessibility of its webpage displaying the accused mark), or from a defendant who operates a website that happens to be visited by a few forum residents, *see be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) (holding that out-of-state dating website operator was not subject to jurisdiction in Illinois where "the 20 Chicagoans who created free profiles on [the defendant's website] may have done so unilaterally by stumbling across the website …."). In summary, Plaintiff has carried its burden to show that MoneyBunny purposefully directed its activities at New Mexico.

### ii. Arising From

"Step two of the minimum contacts test requires [the district court] to determine whether the plaintiff's injuries 'arise out of' the defendant's forum-related activities." *Old Republic*, 877

F.3d at 908. There must be a "connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, ---U.S.---, 137 S. Ct. 1773, 1781 (2017). "[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 931 n.6 (2011); *accord Old Republic*, 877 F.3d at 908.

Plaintiff has carried its prima facie burden to show that MoneyBunny's contacts are suit-related. Plaintiff contends in its complaint that MoneyBunny participated in the New Mexico market by selling women's eyewear under the name "LadyBoss," which is identical to Plaintiff's mark and would lead New Mexico residents confuse the parties' products. Plaintiff further alleges that it has made a substantial investment to promote its marks and that MoneyBunny's sale of a confusingly similar product has essentially deprived Plaintiff the value of its LadyBoss marks. MoneyBunny's contacts with New Mexico are suit-related.

### iii. Fairness

Because Plaintiff has satisfied its minimum contacts burden, the burden shifts to the MoneyBunny to "present[ ] a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *C5 Med. Werks.*, 937 F.3d at 1323 (quoting *Old Republic*, 877 F.3d at 904). "Such cases are rare." *Rusakiewicz v. Lowe,* 556 F.3d 1095, 1102 (10th Cir. 2009). The district court examines unreasonableness by considering "(1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *XMission*, 955 F.3d at 840 (quoting *Old Republic*, 877 F.3d at 909).

Defendants' arguments occur on pages 8-9 and 16-17 of their Rule 12(b)(2) and Rule 55 motions, and on pages 6-7 of their reply brief in support of those motions. The Court limits its analysis to Defendants' specific arguments. First, they claim that claim they have no physical presence in the state. But they have marketed, done business through an interactive website, and sold their products in New Mexico. Accordingly, the burden of defending in New Mexico is minimal. *See Hemi*, 622 F.3d at 760 (out-of-state defendant's burden of litigating in the forum state minimal where it "set up an expansive, sophisticated commercial venture online.") Second, Defendants say that New Mexico has a low interest in resolving this dispute because a very small number of forum residents have purchased LadyBoss Glasses. However, in *Hemi* the plaintiff's complaint identified a single customer who purchased the defendant's cigarettes, and the court nevertheless upheld jurisdiction over the defendant. *Id*. at 755. Defendants next claim that "New Mexico does not share the public interests that other states like Wyoming and California may have in resolving this dispute because MoneyBunny is not actively participating a substantial amount in the New Mexico market." ECF No. 25 at 7. MoneyBunny advanced no authority in support of this assertion, and it is not the Court's role to analyze unsupported arguments of this kind.[3] MoneyBunny has not carried its burden of proof to show a compelling case that the exercise of jurisdiction in New Mexico is unreasonable.

### D. Personal Jurisdiction over Ms. Mitchell

Based on the current record, the Court lacks enough information to determine whether it can exercise personal jurisdiction over Ms. Mitchell personally. Plaintiff claims that Ms.

---

[3] The only case that MoneyBunny cited in support of its argument is *Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1190 (D. Colo. 1999). However, that case was about, among other things, whether the defendant's two cease-and-desist letters sent to a Colorado resident informing her of her suspected trademark and copyright infringement could be a basis for specific jurisdiction. *Wise* does not endorse MoneyBunny's theory that jurisdiction over it would be unfair because it supposedly is not an active participant in the New Mexico market to a substantial degree.

Mitchell is the founder and owner of MoneyBunny and that she personally does business as MoneyBunny. However, Plaintiff failed to articulate a legal framework needed to analyze how MoneyBunny's contacts can be imputed to Ms. Mitchell personally. Given that the Court has found sufficient MoneyBunny's contacts with New Mexico, the parties will file supplemental briefs explaining how Ms. Mitchell is or is not subject to jurisdiction based on her and/or her company's contacts.

Briefs will be filed seriatim. Plaintiff will file a supplemental brief to the order for additional briefing on or before November 9, 2020. Defendants will respond to Plaintiff's supplemental brief on or before November 23, 2020. Plaintiff will reply to Defendants' response on or before December 7, 2020. Briefs will not exceed 18 pages.

### III.   Defendants' Motion to Vacate the Clerk's Entry of Default

If a party in default acts before entry of judgment, Federal Rule of Civil Procedure 55(c) provides that the court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). "Default judgments are a harsh sanction" *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (citing *M.E.N. Co. v. Control Fluidics, Inc.,* 834 F.2d 869, 872 (10th Cir. 1987)). Therefore, the good cause standard "is fairly liberal because '[t]he preferred disposition of any case is upon its merits and not by default judgment,'" *Behounek v. Lujan Grisham,* No. 1:20-CV-00405-JCH-LF, 2020 WL 5757798, at *3 (D.N.M. Sept. 28, 2020) (quoting *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970)) (alteration in original). To determine if the moving party has proven good cause, the district court considers the following three factors: "'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'" *Watkins v. Donnelly*, 551 F. App'x 953, 958 (10th Cir. 2014) (quoting *Pinson v. Equifax Credit Info. Servs.,* 316 Fed. App'x. 744, 750 (10th Cir. 2009)). "On a motion for relief from the entry of a default or a default judgment, all doubts are resolved in favor of the party

seeking relief." *Gage v. Somerset Cty.*, 369 F. Supp. 3d 252, 257 (D.D.C. 2019) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Taking the three *Watkins* factors in reverse order, the Court next analyzes whether Defendants have (A) presented meritorious defenses, (B) the prejudice to Plaintiff of setting aside the default, and (C) Defendants' willfulness.

### A. Meritorious Defense

For this factor, Defendants are not required to persuade the Court that they are likely to prevail in their defense. *See SecurityNational Mortg. Co. v. Head*, No. 13-CV-03020-PAB-BNB, 2014 WL 4627483, at *3 (D. Colo. Sept. 15, 2014) ("A movant is not required to 'demonstrate a likelihood of success on the merits.'") (quoting *Coon v. Grenier,* 867 F.2d 73, 77 (1st Cir. 1989)). "Rather, the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978). "Whether or not those allegations are true is not determined by the court upon the motion to set aside the default, but would be the subject of later litigation." *Lakeview Cheese Co., LLC v. Nelson-Ricks Creamery Co.*, 296 F.R.D. 649, 654 (D. Idaho 2013) (citing *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010)).

MoneyBunny and Ms. Mitchell's principal claim is that they have a meritorious personal jurisdiction defense. The Court rejects that defense as to MoneyBunny as explained *supra*. However, for purposes of ruling on their Rule 55 motion, Defendants have carried their minimal burden on this element to set aside the default. *See Behounek*, 2020 WL 5757798, at *4 ("allegations of a defense are meritorious if they contain even a hint of a suggestion" to establish a "legally cognizable" defense) (citations and internal quotation marks omitted). As the Tenth Circuit has noted, "the subject [of personal jurisdiction and website operation] is still in a state of

flux." *XMission*, 955 F.3d at 844 (citation omitted). Defendants therefore plausibly argued that their internet activities did not give rise to jurisdiction, so the meritorious defense prong weighs in Defendants' favor.[4]

### B. Prejudice to Plaintiff

Plaintiffs argues that it will be prejudiced by setting aside the default because: (1) it has already incurred significant fees seeking the default and litigating against vacatur, (2) since the default was entered in December 2019, "Defendants have not ceased their infringement," and therefore Plaintiff "has been subjected to ongoing … willful infringement of its marks and attendant damages," and (3) vacating the default "will prolong this lawsuit," causing additional harm to Plaintiff. ECF No. 22 at 22.

The prejudice factor weighs in favor of setting aside the default. First, incurring past and current litigation expenses are not, by themselves, prejudicial. *See Dassault Systemes, SA v. Childress*, 663 F.3d 832, 842 (6th Cir. 2011) ("[I]t does not make intuitive sense that simply claiming an increase in litigation cost should be sufficient to establish prejudice. Setting aside default will *always* increase litigation cost to the plaintiff because the plaintiff will actually have to litigate the case.") (citation and quotation marks omitted) (emphasis in original). Plaintiff's second and third arguments, that it remains uncompensated for Defendants' continuing infringing conduct, is unpersuasive. An eventual trial would determine if Defendants are liable to Plaintiff. *See id*. If Defendants were eventually found liable, then damages as a result of

---

[4] Defendants also describe their alleged meritorious defenses to each of Plaintiff's causes of action for trademark infringement, dilution, false designation of origin, and unfair competition under federal and state law. The Court does not decide whether Defendants have asserted meritorious non-jurisdictional defenses. For purposes of deciding the Rule 55 motion, it is sufficient that Defendants have raised at least one meritorious defense – personal jurisdiction – to satisfy the meritorious defense requirement. *See Gage*, 369 F. Supp. 3d at 260.

Defendants' infringing conduct would be assessed and Plaintiff would be "made whole." *Id*. at 843. The prejudice factor weights in favor of setting aside the default.

### C. Defendants' Willfulness

Defendants contend that their failure to answer the complaint was unintentional. They claim that Ms. Mitchell believed this lawsuit was "related to another case that her local attorney was already handling," namely the TTAB proceedings. ECF No. 19 at 20. Plaintiff counters that this explanation is "hard to believe and … uncorroborated." ECF No. 22 at 21. Hard to believe because the TTAB proceedings were stayed specifically to litigating this lawsuit, something that Ms. Mitchell's lawyer would have told her. Uncorroborated because Defendants did not provide TTAB counsel's affidavit swearing to Ms. Mitchell's version of events. Plaintiff therefore argues that Defendants willfully ignored the complaint and summons that was properly served upon them.

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Mesle*, 615 F.3d at 1092 (alteration and emphasis in original). Even though Plaintiff claims that Defendants' excuse for not responding to the lawsuit is hard to believe, the Court must credit as true Ms. Mitchell's sworn statement that she "was under the impression that this lawsuit involved another case," – the TTAB proceeding. ECF No. 19-1, 2. Given that Defendants have provided a sworn statement explaining Defendants' period of inaction, the Court concludes that this factor weighs in favor of setting aside the default. *See United States v. Timbers Pres., Routt Cty., Colo.*, 999 F.2d 452, 454 (10th Cir. 1993) ("Generally a party's conduct will be considered culpable only if the party defaulted willfully or has *no excuse* for the default.") (emphases added) (citation omitted). Moreover, at the time Defendants obtained counsel and moved to set aside the default, this case was relatively new. Plaintiff filed its complaint on November 6, 2019. It then obtained an entry

of default on December 30, 2019. About a month-and-a-half later, on February 21, 2020, counsel for Defendants first entered an appearance. Pursuant to an agreed extension of deadlines, Defendants moved to set aside the default on March 9, 2020, about a month after Plaintiff filed its default judgment motion. Even though Defendants appear to concede that service on them was proper, they misunderstood the process. Once defense counsel was obtained, they timely moved to set aside the default with delaying proceedings overall, which weighs in favor of vacatur.

### D. The Court Will Not Condition Vacatur on Payment of Attorneys' Fees and Costs

Plaintiff argues that the Court should condition the setting aside of the default upon Defendants paying to Plaintiff attorneys' fees and costs incurred in obtaining and litigating the default. "The imposition of conditions in an order vacating a default is a device frequently used to mitigate any prejudice which plaintiff may suffer by allowing defendants to plead." *Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133, 1136 (10th Cir. 1974). "The ability to impose a reasonable condition, such as payment of attorney fees, allows the Court to balance any undue prejudice to the moving party against the Court's preference for resolving disputes on the merits." *Lakeview Cheese*, 296 F.R.D. at 655 (citation omitted).

The Court declines to condition vacatur on payment of costs and fees to Plaintiff. As noted earlier, the summons and complaint were served on Defendants in November 2019. Default was entered in late December 2019 and counsel for Defendants entered appearances in February 2020. Once on the case, defense counsel promptly responded to the motion for default judgment. Although the Court does not condone Defendants' tardiness, Defendants apparently were *pro se* until February 2020 while this case was still in its beginning stages. The Court will not use its discretion to impose attorneys' fees and costs as a condition of lifting the default. In

summary, good cause exists to vacate the default as to each Defendant. Defendants' Rule 55 motion is granted.

## IV.     Plaintiff's Motion for Default Judgment

Because the Court vacates the entry of default (which is a necessary precursor for default judgment), the Plaintiff's motion for default judgment is denied without prejudice. *See Watkins*, 551 F. App'x at 958 (explaining that if an entry of default is vacated no default judgment can issue).

## V.     Plaintiff's Motion for Leave to File a Surreply

The Local Rules of Civil Procedure for the District of New Mexico provide that leave of court is required to file a surreply. *See* D.N.M.LR-Civ. 7.4(b). Courts generally do not grant a party leave to file a surreply unless the opposing party's reply brief includes new information that the responding party needs an opportunity to address. *See C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1329 n.1 (D. Kan. 2008) ("[a] surreply will not be allowed unless the reply of the party filing the initial motion contained new information which the responding party needs an opportunity to address") (citation omitted).

Plaintiff wishes to file a surreply to address Defendants' statement in their reply that "Defendants may well have established superior rights to the trademark at issue by … being the first to apply to federally register that trademark for … eyeglasses." ECF No. 25 at 7. Plaintiff says that Defendants' argument and supporting material "lack merit because it is black letter law that trademark rights and priority are based on dates of first use of the mark, not the registration application date." ECF No. 28 at 2. (emphasis in original).

Plaintiff's request for leave to file a surreply is denied. The parties' trademark-specific arguments are not the focus of the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Although the parties are free to revisit the merits of their trademark-specific claims

and defenses later in the litigation, at this stage Plaintiff's proposed surreply is not helpful or useful. Motion denied.

**VI.    Conclusion**

**IT IS THEREFORE ORDERED that**

1. Plaintiff Poulin Ventures, LLC's Motion for Default Judgment **(ECF No. 15)** and accompanying request for attorneys' fees and costs are **DENIED without prejudice**;

2. Defendants MoneyBunny Co. LLC and Lauren Lee Mitchell a.k.a Lauren Scott's Motion to Set Aside Clerk's Entry of Default **(ECF No. 19)** is **GRANTED in part and DENIED in part** as follows:

    - Defendants' Motion under Federal Rule of Civil Procedure 55(c) to set aside the Clerk's Entry of Default is **GRANTED**;

    - Defendants' Motion under Federal Rule of Civil Procedure 12(b)(2) is **DENIED** with respect to Defendant MoneyBunny Co. LLC. The Court **RESERVES RULING** on Defendants' Rule 12(b)(2) Motion as to Defendant Mitchell until the parties file briefs addressing whether the Court has jurisdiction over Ms. Mitchell. Plaintiff will file a supplemental brief on or before November 9, 2020. Defendants will respond to Plaintiff's supplemental brief on or before November 23, 2020. Plaintiff will reply to Defendants' response on or before December 7, 2020. Briefs will not exceed 18 pages.

3. Plaintiff Poulin Ventures, LLC's Motion for Leave to File Surreply **(ECF No. 28)** is **DENIED**.

**IT IS FINALLY ORDERED that** the Clerk of Court's Entry of Default filed on December 30, 2019 against Defendants MoneyBunny Co. LLC and Lauren Lee Mitchell a.k.a. Lauren Scott **(ECF No. 14)** is **VACATED**.

**IT IS SO ORDERED**.

_____

SENIOR UNITED STATES DISTRICT JUDGE