# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

POULIN VENTURES, LLC,
a New Mexico Corporation,

    Plaintiff,

v.                                              No. 1:19-cv-01031-JCH-GBW

MONEYBUNNY CO., a Wyoming
Corporation, and LAUREN LEE
MITCHELL, also known as LAUREN
SCOTT, an individual,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Lauren Lee Mitchell a.k.a Lauren Scott's Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, as moved for in Defendants' Motion to Set Aside Clerk's Entry of Default (ECF No. 19). The Court, having considered the motion, evidence, and supplemental briefs (ECF Nos. 38, 40, 41), concludes that personal jurisdiction over Ms. Mitchell is lacking and therefore her Rule 12(b)(2) motion will be **granted**.

### I.    BACKGROUND

The Court has already extensively detailed the facts of this case in a prior Memorandum Opinion and Order, ECF No. 37 (Order). Familiarity with the facts of this case is presumed. The Court fully incorporates herein the entire prior Order and gives a summary below of the pertinent facts bearing on the issue of jurisdiction.

Plaintiff is a New Mexico limited liability company headquartered in Albuquerque. It provides fashion items such as clothing and sunglasses. According to Plaintiff, it owns protectable interests in the trademarks "LadyBoss" and "LadyBoss Swag" (collectively "LadyBoss Marks") for apparel, eyewear, and retail services. Plaintiff has been using the LadyBoss Swag mark in commerce for sunglasses since August 29, 2016. Plaintiff sells its LadyBoss-branded products on its website, www.ladyboss.com.

Plaintiff filed suit in this Court, alleging that Defendant MoneyBunny Co. and its founder and owner Lauren Mitchell have been offering and selling anti-blue light glasses using a mark identical to Plaintiff's. MoneyBunny is a limited liability company registered in Wyoming. Ms. Mitchell is purportedly a California resident. Ms. Mitchell is the managing member of both MoneyBunny and LadyBoss Glasses, LLC, which are affiliate businesses. According to Plaintiff, Defendants began using the name LadyBoss as a mark after Plaintiff's use or registration of the LadyBoss Marks.

In 2020, Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2), claiming that that the Court lacks personal jurisdiction over them because their contacts with the forum state, New Mexico, were insufficient and that it would be unfair for them to litigate in New Mexico.

The Court issued a partial ruling. Specifically, it ruled that personal jurisdiction existed over MoneyBunny, but held that the evidentiary record was insufficient to determine whether personal jurisdiction also existed over Ms. Mitchell. Because personal jurisdiction requirements "must be met as to each defendant," *Newsome v. Gallacher*, 722 F.3d 1257, 1266 (10th Cir. 2013), the parties were ordered to file supplemental briefs explaining how

Ms. Mitchell was subject to personal jurisdiction based on her and/or her company MoneyBunny's contacts with New Mexico.

In November 2020, Plaintiff responded in its supplemental brief that specific personal jurisdiction in New Mexico is appropriate because Ms. Mitchell is the "primary participant" in the wrongdoing giving rise to jurisdiction over MoneyBunny and that MoneyBunny is her "alter-ego."

## II. DISCUSSION

### A. Personal jurisdiction analysis with respect to Ms. Mitchell

"A motion to dismiss is an appropriate procedural vehicle for resolving personal jurisdiction …." *Albuquerque Facility, LLC v. Danielson*, 181 F. Supp. 3d 924, 929–30 (D.N.M. 2016) (citation omitted). Plaintiff bears the burden to establish that personal jurisdiction exists over Defendants. *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). Where, as here, no evidentiary hearing is held, Plaintiff only needs to make a prima facie showing that personal jurisdiction exists. *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229 (10th Cir. 2006). Under the prima facie standard, "the plaintiff may defeat a motion to dismiss by presenting evidence (either uncontested allegations in its complaint or other materials, or an affidavit or declaration) that if true would support jurisdiction over the defendant." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020) (citation and internal quotation marks omitted). If the parties present conflicting affidavits or materials, then the Court must accept Plaintiff's properly documented evidentiary proffers as true and construe them in the light most favorable to Plaintiff. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

The parties agree that New Mexico does not have general jurisdiction over Ms. Mitchell. However, Plaintiff argues that specific personal jurisdiction over Ms. Mitchell exists because: (1) she is a primary participant in the wrongdoing that gave rise to jurisdiction over MoneyBunny and (2) MoneyBunny is Ms. Mitchell's alter ego.

### 1. Primary Participant

"Jurisdiction over a corporation in a particular forum does not automatically confer jurisdiction over that corporation's employees." *Newsome*, 722 F.3d at 1275. This is referred to as the "no-imputed-contacts rule," by which "[e]mployees' contacts with the forum state are not to be judged according to their employer's activities there." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). A related yet distinct concept known as the "fiduciary shield doctrine" provides that "a nonresident corporate agent generally is not individually subject to a court's jurisdiction based on acts undertaken on behalf of the corporation." *Id.* (citation omitted). "[S]o long as the employee acted solely on the corporation's behalf," the employee's contacts with the forum state "will not count against the employee in the personal jurisdiction analysis" under the fiduciary shield doctrine. *Id.*

The fiduciary shield doctrine, unlike the no-imputed-contacts rule, is a matter of state law, not federal constitutional due process. *Id.* New Mexico courts have declined to adopt the fiduciary shield doctrine as a limit on the extent of personal jurisdiction: "New Mexico exercises personal jurisdiction to the full extent the constitution allows," and "the fiduciary shield doctrine is not constitutionally required in New Mexico." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 49, 131 N.M. 772, 788, 42 P.3d 1221, 1237. Nor does Ms. Mitchell claim that the doctrine applies.

Thus, the only question is whether the Court's exercise of personal jurisdiction over Ms. Mitchell would comport with due process. Under the Due Process Clause, the "minimum contacts analysis considers actions taken by individuals in their role as corporate employees or officers." *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 45 (D.C. Cir. 2020). "An employee of a corporation subject to personal jurisdiction will not be shielded from jurisdiction if he or she is a 'primary participant[ ] in [the] alleged wrongdoing intentionally directed' at the forum state, which activities formed the bases of the jurisdiction over the corporation." *Santa Fe Techs.*, 2002-NMCA-030, ¶ 49 (quoting *Calder*, 465 U.S. at 790). "[A]ll of [a corporate employee's] suit-related contacts—professional and personal—factor into the personal jurisdiction analysis." *Urquhart-Bradley*, 964 F.3d at 46 (citation omitted).

When analyzing tort-based claims such as trademark infringement, the Court looks to "the harmful effects [of Ms. Mitchell's conduct] in the forum state to assess purposeful direction." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020); *Old Republic Ins. Co. v. Continental Motors*, *Inc.*, 877 F.3d 895, 908 (10th Cir. 2017); "Purposeful direction … has three elements: (1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics*, 946 F.3d at 1231. "As the Supreme Court cautioned …, a 'plaintiff cannot be the only link between the defendant and the forum.'" *Wyles v. Brady*, 822 F. App'x 690, 695 (10th Cir. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "'[A] defendant's interaction with a plaintiff—even when allegedly tortious—is insufficient to establish personal jurisdiction' without additional contacts between the defendant and the forum state." *Id*. (quoting *Dental Dynamics*, 946 F.3d at 1231).

Turning to the "expressly aimed" prong of the purposeful-direction test, Plaintiff must show that New Mexico is the "focal point both of [Ms. Mitchell's alleged actions] and of the harm suffered." *Walden*, 571 U.S. at 287. Plaintiff argues that jurisdiction exists because as MoneyBunny's sole owner and operator, Ms. Mitchell controls MoneyBunny's business activities and is responsible for its decision to "operate the interactive website, … use [Plaintiff's] LadyBoss mark, and … to use the interactive website and [Plaintiff's] LadyBoss mark to sell eyeglasses to New Mexico residents." ECF No. 38 at 4. Plaintiff included several screenshots and videos of Ms. Mitchell's social media accounts or of her internet presence. In a screenshot of Ms. Mitchell's LinkedIn profile, Ms. Mitchell claims to have created and to own the e-commerce brand "LadyBoss Glasses," which Plaintiff says is a sufficient contact by itself to support jurisdiction. In addition, Plaintiff points out that before this lawsuit began, Plaintiff's owner informed Defendants about their alleged infringing conduct through written correspondence and a telephone call. During the telephone call, Ms. Mitchell admitted that she knew of Plaintiff's products, services, and trademark.

The Court concludes that Plaintiff has not made a prima facie showing that Ms. Mitchell is subject to jurisdiction in New Mexico on the theory that she expressly aimed her conduct at New Mexico as the "primary participant" of MoneyBunny's alleged wrongdoing. As noted in the prior Order, it is undisputed that Ms. Mitchell has no personal physical presence in New Mexico, owns no registered businesses in the State, nor does she own or have buildings, land, addresses, telephone listings, or bank accounts in New Mexico, etc. Thus, Plaintiff attempts to impute MoneyBunny's contacts with New Mexico to Ms. Mitchell by claiming that she was a primary participant in MoneyBunny's alleged wrongdoing.

However, the cases that Plaintiff relies on show that the defendants in those cases had far greater contacts with the forum state than Ms. Mitchell does. For instance, in *Santa Fe Techs.*, the nonresident defendants, a corporation and its president, "reached out to New Mexico" to do business with the plaintiff, a New Mexico-based corporation, eventually leading to the plaintiff and defendants' businesses "act[ing] as if the two companies were one, intermingling funds, extending loans, and planning for a future merger." 2002-NMCA-030, ¶¶ 23, 24. The president was held to be a personal participant in part because he was on the plaintiff's insurance and health plans, had a New Mexico cell phone and telephone number, and sent an agent to New Mexico. *Id*. ¶¶ 23, 27, 49. Even though MoneyBunny may have knowingly conducted business with New Mexico residents via a website, Plaintiff's contentions show that Ms. Mitchell has far fewer contacts with the New Mexico compared to the corporate president in *Santa Fe Techs*.

In *Wegerer v. First Commodity Corp. of Bos.*, 744 F.2d 719, 721, 727-28 (10th Cir. 1984), also cited by Plaintiff, the Tenth Circuit upheld jurisdiction over two officers who were the sole shareholders and directors of a commodity options brokerage firm based in Boston. However, the officers in *Wegerer* had greater contacts with the forum state than Ms. Mitchell. Both officers were prohibited by a consent decree from mailing certain investment-related ads or statements to the forum state, yet one officer reached out to the Kansas plaintiffs by mailing them copies of investment recommendations while the officer mailed a letter to Kansas bearing the officer's signature – contacts which showed that the officers reached out to the forum state. *Id*. at 721, 727. In *Niemi v. Lasshofer*, 770 F.3d 1331, 1337 (10th Cir. 2014), the court upheld jurisdiction over a non-resident European agent who "expressly aimed" a "fraudulent financing scheme" at Colorado because the agent knew of

the plaintiffs' Colorado residence and made false reassurances to the plaintiffs in numerous communications and during an in-person meeting. *Id*. at 1349. Compared to the defendants in and *Wegerer* and *Niemi*, Ms. Mitchell personally engaged in far less allegedly tortious conduct in the forum state.[1]

Plaintiff also suggests that Ms. Mitchell knew that Plaintiff was a New Mexico company because Plaintiff's litigation papers disclosed Plaintiff's New Mexico address in the parties' Trademark Trial and Appeal Board dispute. And, Plaintiff continues, Ms. Mitchell admitted to Plaintiff's owner that she knew of Plaintiff's products, services, and marks, and therefore she knowingly caused harm in New Mexico.

However, it is not clear from Plaintiff's contentions that Ms. Mitchell actually knew that Plaintiff was a New Mexico resident. In any case, Plaintiff cited no authority that a defendant's knowledge of the existence of a mark and the residence of the mark's alleged holder creates jurisdiction. To the contrary, the Supreme Court has instructed that a plaintiff's "strong forum connections," combined with a plaintiff suffering "foreseeable harm" in the forum state is insufficient to establish minimum contacts. *Walden*, 571 U.S. at 289; *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state.")

---

[1] In support of its primary participant theory, Plaintiff cites two other cases, *Albuquerque Facility, LLC v. Danielson*, 181 F. Supp. 3d 924, 932 (D.N.M. 2016) and *Romero v. TitleMax of New Mexico, Inc.*, No. CV 17-775 KG/SCY, 2020 WL 4547294, at *3 (D.N.M. Aug. 6, 2020). However, these cases analyzed jurisdiction over a business entity's officers based on an alter-ego or agency theory and therefore these cases are neither precedential nor persuasive.

In summary, Plaintiff has not made a prima facie showing that Ms. Mitchell is subject to jurisdiction as a primary participant in MoneyBunny's purported wrongdoing in New Mexico.

### 2. Alter Ego

Plaintiff's next jurisdictional argument is that MoneyBunny's corporate form should be disregarded because it is Ms. Mitchell's alter ego. Ms. Mitchell retorts that Plaintiff is "procedurally barred" from making this argument because "[n]owhere in Plaintiff's Complaint … does Plaintiff make this argument." ECF No. 40 at 6. However, as the Court understands it, Plaintiff asserts an alter ego theory for purposes of analyzing personal jurisdiction rather than to pierce the corporate veil. Because the "an alter ego analysis" can "frame [the district court's] inquiry into … personal jurisdiction," the Court believes that the alter ego issue is properly raised even if Plaintiff did not specifically plead the theory in the complaint. *Alto Eldorado P'ship v. Amrep*, 2005-NMCA-131, ¶ 28, 138 N.M. 607, 617, 124 P.3d 585, 595.

Turning to the alter ego analysis, both parties cite to *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1018 (10th Cir. 1990), which holds that "a corporation may be deemed to be a mere instrumentality of an individual if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not kept separate from individual finances, individual obligations are paid by the corporation or vice versa, (4) corporate formalities are not followed, or (5) the corporation is merely a sham." *Id.*[2] To prove "instrumentality," the plaintiff must make a prima facie showing that "there is such

---

[2] Because both parties assume that the *Home-Stake* test applies, the Court will too. But, as discussed further in this Opinion, the Court has doubts about the *Home-Stake* framework given that it is an application of Oklahoma law.

unity of interest and ownership that the individuality or separateness of the [entities] has ceased." *Albuquerque Facility, LLC*, 181 F. Supp. 3d at 932 (citation and quotation marks omitted).

Plaintiff has adduced no competent proof concerning elements 1-3. That is, there are no allegations or proof from Plaintiff that MoneyBunny is undercapitalized, lacks separate books, or that its finances and obligations are intermingled with Ms. Mitchell's or vice versa.[3]

Plaintiff seems to focus its argument on elements 4 and 5 – lack of corporate formalities and sham incorporation. Regarding element 4, Plaintiff submitted documentation from Wyoming officials dissolving MoneyBunny for not following certain rules, which Plaintiff claims supports its argument concerning element 4. In addition, Plaintiff points to the following facts which Plaintiff appears to link to element 5: Ms. Mitchell admits that she created and owned MoneyBunny; her website, www.moneybunny.co, is "all about [her]" ECF No. 38 at 8, and the website does not identify a separate legal entity; there are no facts indicating that MoneyBunny has other officers, members, or employees; Ms. Mitchell's alleged social media accounts used handles or hashtags like "@the.moneybunny" or "#ladyboss." Pl.'s Ex. A, ECF No. 43-1; Pl.'s Ex. C, ECF No. 43-3; in an interview article titled "E-commerce Queen: Went from Waitressing at 22 to Owning a 7-figure Empire at 23," Ms. Mitchell described working in e-commerce as a "beautifully unregulated gold mine." Pl.'s Ex. 1, ECF No. 38-2, 2, 5. And, finally, in a TikTok video with the handle @sheslaurenlee, a woman, presumably Ms. Mitchell, appears in the video with the text: "$5

---

[3] Plaintiff's lack of evidence concerning these elements is a ground for Plaintiff's motion for jurisdictional discovery, which the Court addresses below.

million in 3 years." Pl.'s Ex. D, ECF No. 43-4. The video then transitions to the words "started a lil online store selling sunglasses," superimposed on a spreadsheet showing over $5 million in sales of sunglasses. *Id*.

The Court holds that Plaintiff's allegations and materials are insufficient to show that Ms. Mitchell is personally subject to jurisdiction in New Mexico. Ms. Mitchell provided a certificate demonstrating that MoneyBunny's delinquent status in Wyoming has been resolved. Even if Ms. Mitchell alone controlled MoneyBunny, Plaintiff cites no authority that it is impermissible for one person to be the sole owner of a corporation. Nor does Ms. Mitchell's internet conduct demonstrate that she disregarded the corporate form or, more importantly, directed her activity at New Mexico. Accordingly, Ms. Mitchell's Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction is granted and Plaintiff's complaint against Ms. Mitchell is dismissed without prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("a dismissal for lack of jurisdiction should be entered without prejudice.")

### B. Request for jurisdictional discovery

Plaintiff states that, in the alternative, if the evidence is insufficient to establish personal jurisdiction, the Court should stay its ruling on the Rule 12(b)(2) motion to allow Plaintiff to conduct jurisdictional discovery.

District courts have broad discretion over discovery, including whether to grant discovery requests with respect to jurisdictional issues. *Dental Dynamics*, 946 F.3d at 1233 (citation omitted). "A district court abuses its discretion in denying a jurisdictional discovery request where the denial prejudices the party seeking discovery." *Id*. (citation omitted). "Prejudice exists where pertinent facts bearing on the question of jurisdiction are

controverted ... or where a more satisfactory showing of the facts is necessary." *Id*. (citation and quotation marks omitted).

Plaintiff's stated need for discovery is that "Defendants' past behavior in this litigation, including Defendant Mitchell's purposeful evasion of service and delay in responding to the Complaint," create a "substantial risk that [Plaintiff] cannot fairly litigate this case and obtain the requested relief without Defendant Mitchell as a party." ECF No. 38 at 10. However, the jurisdictionally relevant inquiry is "whether the defendant's conduct connects h[er] to the forum in a meaningful way[,]" *Walden*, 571 U.S. at 290, not whether Plaintiff will have difficulty securing Ms. Mitchell's participation in the lawsuit.

Plaintiff also contends that if Ms. Mitchell and MoneyBunny were truly separate, then Ms. Mitchell would have submitted evidence that MoneyBunny "keeps books and records, has a separate bank account from [Ms. Mitchell], consistently files its tax returns, and the like." ECF No. 41 at 4. Plaintiff states that Ms. Mitchell "ignores the obvious reality that [Plaintiff] is … able to rely on publicly available evidence as there has been no discovery." *Id*. at 5.

To the extent that Plaintiff is making a discovery request of Defendants' books and business records, etc., the request is denied. Plaintiff presumably wants this material to put on evidence of the elements discussed in *Home-Stake* – undercapitalization, intermingled finances, etc. – for determining when a corporation is an individual's instrumentality.

However, the Court is doubtful that *Home-Stake* provides the correct standard for assessing Ms. Mitchell's jurisdictional contacts because *Home-Stake* was an application of Oklahoma law in a diversity jurisdiction case. 907 F.2d at 1018. Plaintiff has not explained why Oklahoma law should apply. Although not discussed by the parties, the Court notes that

"an alter ego theory that uses substantive corporate law is not the test that New Mexico uses for personal jurisdiction. Instead, the test is one of constitutional perimeters," *i.e.*, "the satisfaction of due process." *Amrep*, 2005-NMCA-131, ¶¶ 2, 25. Adjudged against this standard, the Court needs no further evidence or argument about Ms. Mitchell's contacts to alter its conclusion that jurisdiction over her is lacking. The "constitutional perimeters," *id*. ¶ 2, of personal jurisdiction over Ms. Mitchell have been explored and argued about in multiple rounds of briefing on the issue, including one specifically ordered by the Court. Discovery is not warranted. Plaintiff's discovery request is denied.

### III. CONCLUSION

For the reasons explained herein, it is therefore **ORDERED** that Defendant Mitchell's Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction, as moved for in Defendants' Motion to Set Aside Clerk's Entry of Default **(ECF No. 19)** is **GRANTED**. Plaintiff's claims against Ms. Mitchell are dismissed **without prejudice** for lack of personal jurisdiction. Defendant MoneyBunny remains a defendant in the case. This case is returned to the United States Magistrate Judge to enter any appropriate case orders.

**IT IS SO ORDERED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE