# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

POULIN VENTURES, LLC,
a New Mexico Corporation,

   Plaintiff,

v.            No. 1:19-cv-01031-JCH-GBW

MONEYBUNNY CO., a Wyoming
Corporation, and LAUREN LEE
MITCHELL, also known as LAUREN
SCOTT, an individual,

   Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Plaintiff Poulin Ventures LLC's Renewed Motion for Default Judgment Against Defendant MoneyBunny Co., LLC and Incorporated Memorandum in Support (ECF No. 70).

## I. BACKGROUND

### A. Admitted Facts from Plaintiff's Complaint

Plaintiff is a New Mexico limited liability company. *See* Compl., ECF No. 1, ¶ 6. It provides health services and products and fashion items such as clothing and sunglasses. *Ibid*. It owns protectable interests in the trademarks "LadyBoss" and "LadyBoss Swag" (collectively "LadyBoss Marks") for apparel, eyewear, and retail services. *Id*. ¶ 7. Plaintiff's LadyBoss Swag design mark is registered with the United States Patent and Trade Office (USPTO) for retail store services featuring a variety of goods in the field of apparel. *Id*. ¶ 11. It has been using the LadyBoss Swag mark in commerce since at least August 8, 2016. *Ibid*. At the time the complaint was filed, Plaintiff's LadyBoss word mark was the subject of a pending application for sunglasses and Plaintiff has been using the LadyBoss mark in commerce for sunglasses since August 29, 2016.

*Id*. ¶ 12. The LadyBoss Marks have been in continuous use in the United States since their 2016 debut and are closely associated with Plaintiff's business and message of good health and a fashionable lifestyle. *Id*. ¶ 14.

   Plaintiff sells its LadyBoss-branded products on its website, www.ladyboss.com. *Inc*. magazine listed LadyBoss as number four in its list of "2019 Inc. 5000: The Most Successful Companies in America," which is the magazine's annual guide to the 5,000 fastest growing private companies in America. *Id*. ¶ 15. At the time Plaintiff filed its complaint, it had about 222,000 Instagram followers, 816,000 Facebook followers, and 32,000 YouTube subscribers. *Id*. ¶ 17.

   Defendant MoneyBunny Co. and its founder and owner Lauren Mitchell have been offering and selling anti-blue light glasses using a mark identical to Plaintiff's. *Id*. ¶¶ 18, 19. Defendant is a Wyoming corporation. *Id*. ¶ 8. Defendant starting using the name "LadyBoss" in commerce after Plaintiff's use or registration of the LadyBoss Marks. *Id*. ¶ 20. Defendant is not affiliated with Plaintiff, and Plaintiff has never authorized Defendant's use of the LadyBoss Marks. Nonetheless, Defendant used LadyBoss to offer, sell and promote its eyeglasses through its website, www.ladybossglasses.com, and social media platforms like Facebook and Instagram. *Id*. ¶ 22.

   Defendant's use of the of the term LadyBoss has created the false impression that Plaintiff endorses or otherwise approves of the products that Defendant sells and creates the false impression that Defendant and Plaintiff are the same entity, associated entities, and/or that Plaintiff has somehow sponsored or approved Defendant's products. The false impression created by Defendant has caused customer confusion. *Id*. ¶¶ 22, 23.

   In the summer of 2019, Plaintiff sent Defendant a cease-and-desist letter demanding that Defendant stop using the LadyBoss mark because it constituted infringement. *Id*. ¶ 31. Defendant did not respond. *Ibid*. Brandon Poulin, an officer of Plaintiff, then contacted Defendant and Ms.

Mitchell through Facebook messenger and by phone. *Id*. ¶ 32. During a July 2019 call, Ms. Mitchell admitted to Mr. Poulin that she knew of Plaintiff's products, services, and trademark before beginning her use of the LadyBoss mark. Despite these contacts and knowledge of Plaintiff's mark both before and after receiving the letter, messages, and phone call, Defendant has willfully refused to cease its infringing activity. *Ibid*.

## II.    PROCEDURAL BACKGROUND

On November 6, 2019, Plaintiff filed a complaint in this Court alleging the following claims against Defendant and Ms. Mitchell: a violation of the Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a) for trademark infringement (Count 1); a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1) for false designation of origin (Count 2); a violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(c) for trademark dilution (Count 3); a violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1 *et seq* (Count 4); a violation of New Mexico's Trademark Act, N.M. Stat. Ann. § 57-3B-15 for trademark dilution (Count 5); and a violation of common law for trademark infringement (Count 6).

Proofs of service filed by Plaintiff show that the complaint was served on Defendant's registered agent in Wyoming on November 12, 2019 and on Ms. Mitchell personally on November 20, 2019. *See* ECF Nos. 11, 12.

On February 21, 2020, counsel for Defendant and Ms. Mitchell entered a special entry of appearance for the "purpose of contesting lack of personal jurisdiction." ECF No. 16. The Court granted Ms. Mitchell's motion under Fed. R. Civ. P. 12(b)(2) and dismissed without prejudice the claims against her. *See* Personal Jurisdiction MOO, ECF No. 37.

But the Court denied the Rule 12(b)(2) motion with respect to Ms. Mitchell's company, Defendant, because Defendant purposefully directed its activities at New Mexico, Plaintiff's

injuries arose out of or related to Defendant's activities in New Mexico, and Defendant failed to show that exercise of jurisdiction over it would be unfair. *Id.* at 6-15.

In the same general timeframe, Defendant's lawyers repeatedly tried to withdraw their legal representation of Defendant. *See* ECF Nos. 32, 42. Because entity defendants must be represented by legal counsel in federal court, D.N.M.LR-Civ. 83.7, the Court previously deferred ruling on the motions to withdraw to afford Defendant an opportunity to object to the withdraw motion or to file an entry of appearance by a new attorney. *See* ECF No. 50.

The Court eventually granted the withdraw motion, gave Defendant 20 days to find a new lawyer, and warned Defendant that failure to obtain new counsel would expose it sanctions, including a default judgment. *See* ECF No. 64.

Despite repeated warnings, Defendant never obtained replacement counsel. *See* ECF No. 65. The Federal Magistrate Judge therefore recommend striking Defendant's answer pursuant to Fed. R. Civ. P. 16(f)(1) so that Plaintiff could request an entry of default. *Ibid*. The Court adopted the recommendation, struck Defendant's answer, and directed the Clerk of Court to enter default against Defendant. *See* ECF No. 67. The Clerk entered default of Defendant, noting that Defendant had "failed to plead or otherwise defend" as provided by Federal Rule of Civil Procedure 55(a). ECF No. 68.

In August 2021, Plaintiff filed a renewed motion for default judgment against Defendant, which the Court proceeds to analyze.

### III.   DEFAULT JUDGMENT MOTION

### A. Federal Rule of Civil Procedure 55 Legal Standard

Rule 55 of the Federal Rules of Civil Procedure "mandates a two-step process for a party who seeks a default judgment in his favor." *Williams v. Smithson*, 57 F.3d 1081 (10th Cir. 1995).

"First, a party must obtain a Clerk's entry of default." *Branch v. Att'y for You*, No. 1:15-CV-01087-RAJ, 2016 WL 7438410, at *2 (D.N.M. June 7, 2016); *Watkins v. Donnelly*, 551 Fed. App'x. 953, 958 (10th Cir. 2014). "Second, the party must either request the clerk to enter default judgment when the claim is for 'a sum certain or a sum that can be made certain by computation,' or "[i]n all other cases, the party must apply to the court for a default judgment.'" *Branch*, 2016 WL 7438410, at *2 (quoting Fed. R. Civ. P. 55(b)(l)–(2) (alteration in original)). In the instant case, Plaintiff seeks injunctive, equitable, and monetary relief, which is not a sum certain, and thus the Court must decide whether to enter a default judgment.

"Because default judgments are a harsh sanction involving a court's power to enter and enforce judgments regardless of the merits of a case, courts do not favor such a sanction 'purely as a penalty for delays in filing or other procedural error.'" *Ibid.* (quoting *In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991)). "[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d at 732 (alteration in original). "A workable system of justice requires that litigants not be free to appear at their pleasure." *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983). Therefore, "the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d at 733. "A trial court is vested with broad discretion in deciding a default judgment question." *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987) (citation omitted).

**B. Analysis**

**1. Plaintiff has properly obtained a Clerk's entry of default**

At step one of the "two-step process" under Rule 55, the Court must analyze whether Plaintiff has obtained a Clerk's entry of default. *Smithson*, 57 F.3d at 1081. The Court finds that the information on the Court's docket clearly indicates that Plaintiff has obtained the Clerk's entry of default against Defendant. As described in the "Procedural Background" section of this Memorandum Opinion and Order, the Clerk entered default of Defendant under Rule 55(a), noting that Defendant had "failed to plead or otherwise defend." ECF No. 68. An entry of default is therefore on the record, and the Court finds that the Clerk's entry is well supported because Defendant has failed to participate in this case.

### 2. Merits of Plaintiff's request for default judgment

At step two of Rule 55, the Court examines the merits of Plaintiff's request for a default judgment. This analysis entails an examination of (1) whether the Court has personal and subject matter jurisdiction, and (2) whether Plaintiff's well-pled allegations state claims for relief.

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties" and must "determine that it has the power to enter the default judgment." *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).

The Court finds that it has federal question jurisdiction over the subject matter of this cause pursuant to federal trademark statutes 15 U.S.C. § 1114(1)(a) (Count 1), 15 U.S.C. § 1125(a)(1) (Count 2), 15 U.S.C. § 1125(c) (Count 3), and 28 U.S.C. § 1331, the "general federal-question statute," *Michigan v. Bay Mills Indian Cmty.,* 572 U.S. 782 n. 2 (2014). The Court finds that it has supplemental jurisdiction over Plaintiff's state-law claims for violations of N.M. Stat. Ann. § 57-12-1 *et seq* (Count 4); N.M. Stat. Ann. § 57-3B-15 (Count 5), and for common law trademark infringement (Count 6) pursuant to 28 U.S.C. § 1367.

Concerning personal jurisdiction, the Court has already found that personal jurisdiction over Defendant in its Personal Jurisdiction MOO, ECF No. 37, which is fully incorporated herein. The Court repeats its finding that personal jurisdiction over Defendant exists. In summary, the Court finds that it has subject matter jurisdiction over the claims and personal jurisdiction over Defendant to enter default judgment against Defendant.

Having concluded that it has the power to enter a default judgment, the Court next must determine whether the well-pled allegations of Plaintiff's complaint, if true, state viable claims for relief. *See Nevada Gen. Ins. Co. v. Anaya*, 326 F.R.D. 685, 693 (D.N.M. 2018) ("Once a district court concludes that it has the power to enter a default judgment against a defendant, the court next must determine whether the well-pled allegations of the complaint, if true, state a claim for relief.") (citation omitted). A district court reviewing a motion for default judgment "accepts as true all well-pled allegations in a complaint, except those related to proving damages." *Ibid.* (citing *U.S. v. Craighead*, 176 Fed. App'x. 922, 2006 WL 936684, *2 (10th Cir. Apr. 12, 2006) (unpublished)).

A defaulting defendant "admits the plaintiff's well-pleaded allegations of fact." *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). However, "[w]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (alteration in original). The judgment must be supported by a sufficient basis in the pleadings. *Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016); *Sampson v. Lambert*, 903 F.3d 798, 806 (8th Cir. 2018) ("A district court may not enter default judgment based on a complaint not well-pleaded.")

### a. Federal and State Trademark Infringement (Counts 1 and 6)

The owner of a registered mark may bring an infringement action against any person who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive …." 15 U.S.C. § 1114(1)(a). "The key inquiry in a trademark infringement case is the likelihood of confusion between two similar marks." *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 832–33 (10th Cir. 2005). "Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers." *John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1138 (10th Cir. 2008). Six factors serve as a guide for evaluating the likelihood of confusion: (1) the degree of similarity between the competing marks; (2) the intent of the alleged infringer in adopting the contested mark; (3) evidence of actual confusion; (4) the similarity of the parties' products and the manner in which the parties market them; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the strength of the contesting mark. *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014).

Concerning its state-law trademark infringement claim, Plaintiff brings that count under New Mexico common law. This Court has held that New Mexico's adoption of the Trademark Act in 1997 apparently "extinguish[ed] the common-law cause of action for trademark infringement, if indeed New Mexico has ever adopted it." *Endodontics, LLC v. Dentsply Int'l, Inc.*, 708 F. Supp. 2d 1209, 1249–50 (D.N.M. 2010). Nevertheless, the Court stated that "[t]o the extent that such a claim exists, however, it is likely to have the same elements as a claim of trademark infringement under the Lanham Act." *Id.* at 1250 (citation omitted). Given the procedural posture of this case, the Court need not address or decide whether New Mexico recognizes a common law cause of

action for trademark infringement. For the purpose of ruling on Plaintiff's default judgment motion, the Court assumes that a cause of action does exist, and that it has the same elements as a federal trademark infringement claim.

An analysis of those elements demonstrates that Defendant infringed Plaintiff's LadyBoss Marks. By defaulting, Defendant has admitted that it intentionally "used the LADYBOSS mark to promote and sell Defendant['s] goods in violation of P[laintiff's] rights in its registered trademarks," and that Defendant's "use of the LADYBOSS mark is likely to cause confusion, mistake, and to deceive customers." Compl. ¶¶ 35, 36. Given these and similar admissions, the Court finds that Defendant has used Plaintiff's LadyBoss Marks in commerce in a manner that is likely to cause customer confusion sufficient to satisfy a claim for federal trademark infringement and New Mexico common law trademark, assuming such a cause of actions exists. Plaintiff is therefore entitled to default judgment on Counts 1 and 6.

### b. False Designation of Origin (Count 2)

For Count 2, Plaintiff cites Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). *See* Compl. ¶¶ at 1, 10-11. Section 1125(a) in fact "creates two distinct bases of liability: false association [(also known as false designation of origin]), § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Strobel v. Rusch*, 431 F. Supp. 3d 1315, 1326 (D.N.M. 2020) (quoting *Intermountain Stroke Ctr., Inc. v. Intermountain Health Care, Inc.*, 638 F. App'x 778, 784 (10th Cir. 2016)) (alterations in original). Plaintiff's complaint does not specify which statutory section it bring its claim under, but it appears that Plaintiff brings a claim for false designation of origin under § 1125(a)(1)(A). "To prevail under Section 43(a), a plaintiff must show (1) that the plaintiff has a protectable interest in the mark; (2) that the defendant has used an identical or similar mark

in commerce; and (3) that the defendant's use is likely to confuse customers." *Underwood v. Bank of Am. Corp.*, 996 F.3d 1038, 1052 (10th Cir. 2021) (citation and quotations omitted).

Concerning element (1), a protectable interest is acquired by "us[ing] a distinct mark in commerce." *Id*. at 1053 (citation omitted, alteration in original). "[S]o long as a person is the first to use a particular mark, that person will prevail against subsequent users of the mark." *Ibid*. (citation omitted, alteration in original). The well-pled facts show that Plaintiff has protectable interests in its marks. Defendant admits that Plaintiff's LadyBoss Swag design mark is registered with the United States Patent and Trademark Office and that Plaintiff's LadyBoss word mark was the subject of a USPTO application when Plaintiff's complaint was filed. Defendant also admits that the LadyBoss Marks have been used continually since 2016 and have become famous and closely associated with Plaintiff's business, products, and brand. Plaintiff's well-pled allegations establish that it has a protectable interests in the LadyBoss Marks.

Concerning elements (2) and (3), Plaintiff's well-pled allegations establish that Defendant has used an identical or similar mark in commerce and that such use is likely to cause customer confusion. Defendant admits that it has used an identical mark in commerce for the same overlapping goods. Defendant also admits that such use "is a false designation of origin causing a likelihood of confusion." Compl. ¶ 43. Given Defendant's admissions, the Court finds that Defendant has used Plaintiff's protectable interests in its LadyBoss Marks in commerce in a manner that is likely to cause customer confusion sufficient to satisfy a claim for false designation of origin. Plaintiff is therefore entitled to default judgment on Count 2.

### c. Federal Trademark Dilution (Count 3) and New Mexico Trademark Dilution (Count 5)

The Lanham Act provides that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark ... in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark...." 15 U.S.C. § 1125(c). A "famous" mark is one that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." *Id*. § 1125(c)(2)(A). "Dilution by blurring" occurs when the similarity between the mark and famous mark impairs the distinctiveness of the famous mark. *Viacom Int'l Inc. v. Baca*, No. CV 18-112 JCH/KRS, 2018 WL 6003539, at *4 (D.N.M. Nov. 15, 2018) (quoting 15 U.S.C. § 1125(c)(2)(B)). To determine dilution by blurring, courts consider a number of factors including (1) the degree of similarity between marks; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the famous mark's owner is engaging in substantially exclusive use of the mark; (4) degree of recognition of the famous mark; (5) whether the user of the mark intended to create an association with the famous mark; and (6) any actual association between the marks. 15 U.S.C. § 1125(c)(2)(B)(i)-(vi). New Mexico's trademark dilution statute is virtually identical to the federal statute and its interpretation tracks federal law. *Baca*, 2018 WL 6003539, at *4 (citing *Navajo Nation v. Urban Outfitters, Inc.*, Civ. No. 12-195 BB/LAM, 2016 WL 3475342, at *5 (D.N.M. May 13, 2016)).

The Court is unconvinced that factor four weighs in Plaintiff's favor. Whether and to what degree Plaintiff's LadyBoss Marks are famous is a legal conclusion that Defendant does not admit to simply by defaulting. *See Surtain*, 789 F.3d at 1245 ("[w]hile a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law.").

11

However, the remaining five factors adequately weigh in Plaintiff's favor. Concerning the first factor – the degree of similarity – Defendant admits that "it has been using the name LADYBOSS as a trademark that is *identical* to Poulin's mark," and thus the first factor weighs in Plaintiff's favor. Compl. ¶ 18 (emphasis added). Concerning the second factor – distinctiveness – Defendant admits that Plaintiff has invested and marketed its marks for several years such that the LadyBoss trademark "has become … distinctive for the sale of goods and services" and that Plaintiff's marks have "become both distinctive." *Id*. ¶¶ 42-43. Factor three – the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark – weighs in Plaintiff's favor because Defendant admits that Plaintiff registered its LadyBoss Swag design mark and had a pending trademark application for the LadyBoss word mark for sunglasses such that Plaintiff engaged in substantially exclusive use of the LadyBoss Marks. The fifth factor – whether the user of the mark intended to create an association with the famous mark – weighs in Plaintiff's favor. Defendant admits that it and Ms. Mitchell were aware of Plaintiff's "prior use, ownership, and registration of the LADYBOSS mark," and that Defendant's alleged infringement was "a deliberate attempt … to make [Defendant's] products appear as if they … are … associated or endorsed by" Plaintiff. *Id*. ¶¶ 26-27. Concerning factor six – actual association between the marks – although Plaintiff's complaint has not identified specific instances of actual association, this factor nonetheless weighs in Plaintiff's favor because Defendant admits that its conduct creates the false impression that the parties' marks are associated and that this has led to customer confusion. *Id*. ¶ 23.

In summary, a weighing of the dilution by blurring factors shows that five of the six relevant factors point to the conclusion that Defendant's conduct resulted in a likelihood of dilution. Plaintiff is therefore entitled to a default judgment on Counts 3 and 5.

**d. New Mexico Unfair Practices Act (Count 4)**

Count 4 of the complaint asserts a violation of New Mexico's Unfair Trade Practices Act (UPA), N.M. Stat. Ann., §§ 57-12-1, *et seq*. The UPA prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." *Id*. § 57-12-3. The UPA defines an "unfair or deceptive trade practice" as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale … of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person …." *Id.* § 57-12-2(D). Pertinent examples of misleading statements include: (1) representing goods or services as those of another when the goods or services are not the goods or services of another; (2) causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; (3) causing confusion or misunderstanding as to affiliation, connection or association with or certification by another. *Id*. § 57-12-2(D)(1)-(3).

Plaintiff lacks standing to sue Defendant under the UPA. "New Mexico cases have historically interpreted the UPA to focus exclusively on consumer protection[.]" *Gandydancer, LLC v. Rock House CGM, LLC*, 2019-NMSC-021, ¶ 29, 453 P.3d 434, 442. "Consistent with its purpose as consumer protection legislation, the UPA gives standing only to buyers of goods or services." *Santa Fe Custom Shutters & Doors, Inc. v. Home Depot*, 2005-NMCA-051, ¶ 17, 137 N.M. 524, 113 P.3d 347 (citation omitted). "Thus, to have standing under the UPA, the plaintiff must have sought or acquired goods or services and the defendant must have provided goods or services." *Tapia v. Padilla*, No. A-1-CA-36961, 2020 WL 7312037, at *5 (N.M. Ct. App. Dec. 3, 2020) (citation and quotation marks omitted).

The UPA does not give Plaintiff standing to sue because Plaintiff is not a "buyer[ ] of goods or services" that Defendant supplied. *Santa Fe Custom Shutters & Doors*, 2005-NMCA-051, at ¶ 17; *Tapia*, 2020 WL 7312037, at *5 (in lawsuit between boxing match promoters, the plaintiffs lacked standing because their UPA claim was "not based on their own consumption of Defendant's provision of goods and services[.]") Plaintiff and Defendant are instead business competitors. The New Mexico Supreme Court recently made clear that the UPA does not confer standing to a business to sue its competitor for engaging in unfair or deceptive trade practices. *See Gandydancer*, 2019-NMSC-021, at ¶ 10 ("the UPA does not provide a cause of action for competitive injury claims.") Plaintiff's UPA claim fails as a matter of law and Defendant's default does not change that conclusion. *See Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) ("Once default is entered, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.") (citation and quotation marks omitted). Because Plaintiff lacks standing to assert a UPA claim, Plaintiff is not entitled to a default judgment on Count 4.

In summary, Plaintiff's motion for default judgment on Counts 1, 2, 3, 5, and 5 is **GRANTED**. Plaintiff's motion for default judgment on Count 4 is **DENIED**.

## IV.    RELIEF

"[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 604 (7th Cir. 2007). "Consequently, even if Plaintiff is entitled to a default judgment, it bears the burden of establishing entitlement to injunctive relief." *Builders Tr. of New Mexico v. Resol. Assurance Grp., Inc.*, No. CIV 09-0249 RB/GBW, 2010 WL 11597294, at *7 (D.N.M. Mar. 12, 2010), *report and*

*recommendation adopted*, No. CV 09-0249 RB/GBW, 2010 WL 11596730 (D.N.M. Mar. 31, 2010).

Plaintiff moves for a permanent injunction, disgorgement of $500,000 of Defendant's profits, $110,541.07 in attorneys' fees, and $729.49 in costs.

## A. Permanent Injunction

Plaintiff requests that this Court enter a permanent injunction against Defendant to enjoin the unlawful conduct. Mot. at 19. The causes of action upon which Plaintiff is entitled to default judgment permit injunctive relief. *See John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1142 (10th Cir. 2008) ("Pursuant to the Lanham Act, the district court has the 'power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent ... a violation [of the Act].'") (quoting 15 U.S.C. § 1116(a)) (alteration in original); N.M. Stat. Ann. § 57-3B-15(A) ("The owner of a mark that is famous in this state shall be entitled, subject to the principles of equity, to an injunction against another's use of a mark …."). For a party to obtain a permanent injunction, it must prove: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Prairie Band Potawatomi Nation v. Wagnon*, 476 F.3d 818, 822 (10th Cir. 2007) (citation omitted).

Concerning the first factor, Plaintiff has actually succeeded on the merits by virtue of Defendant's default. *See Builders Tr. of New Mexico*, 2010 WL 11597294, at *7 ("Plaintiff has already shown actual success of the merits as a result of Defendants' default"). Concerning the second factor, the necessity of an injunction, Plaintiff has shown that Defendant's owner, Ms. Mitchell received cease-and-desist communications, that she acknowledged that she was aware of

the Plaintiff's LadyBoss Marks, and that Defendant continued its infringing conduct. The Court further finds that Defendant's use and continuing use of Plaintiff's LadyBoss Marks in a confusingly similar manner will likely cause irreparable harm to Plaintiff's reputation unless Defendant is permanently enjoined. Moreover, the remedies at law are inadequate to protect Plaintiff's interest in the marks caused by Defendant's repeated and continued use of marks that are confusingly similar thereto. *See Audi AG v. D'Amato*, 469 F.3d 534, 550-51 (6th Cir. 2006) ("[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is not adequate remedy at law for the injury caused by the defendant's continuing infringement.") (citation omitted).

The balance of hardships also favors Plaintiff. Enjoining Defendant and those acting in concert with Defendant from continuing their "open and intentional appropriation of Plaintiff's marks … causes minimal harm to Defendants who have no legal right to the marks and who have been repeatedly warned of the infringing unlawful conduct." *Baca*, 2018 WL 6003539, at *6. Moreover, because Defendant has chosen not to participate in this case or present a defense, "the record is silent as to any harm that it would cause to Defendant[ ] to" refrain its illegitimate conduct. The Court finds that the balance of hardships weigh in Plaintiff's favor.

As to the public interest factor, the term "[p]ublic interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Builders Tr. of New Mexico*, 2010 WL 11597294, at *9 (citation omitted); *Baca*, 2018 WL 6003539, at *6 ("[t]he public has an interest in the maintenance of product quality and not being misled or confused.") (citation omitted). Here, Plaintiff has proven that Defendant's infringing activity is confusing because Defendant admitted that fact. Thus, the public interest is best served by granting Plaintiff its requested injunctive relief.

Plaintiff's request for a permanent injunction is granted.

### B. Disgorgement of Profits

Plaintiff seeks an award of Defendant's profits in the amount of $500,000. "Under the Lanham Act, plaintiffs must show either actual damages or willful action on the part of the defendant as a prerequisite to recover disgorgement of profits." *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161 (10th Cir. 2013) (citing 15 U.S.C. § 1117(a)). However, the Supreme Court "recently clarified that a finding of willfulness can no longer be a mandatory prerequisite to an award of the defendant's profits." *Vitamins Online, Inc. v. HeartWise, Inc*, No. 2:13-CV-00982-DAK, 2020 WL 6581050, at *21 (D. Utah Nov. 10, 2020) (citing *Romag Fasteners, Inc. v. Fossil, Inc.*, 140 S. Ct. 1492, 1494–95 (2020)). "Nevertheless, the Supreme Court noted that willfulness is still 'a highly important consideration in determining whether an award of profits is appropriate.'" *Ibid.* (quoting *Romag Fasteners, Inc.*, 140 S. Ct. at 1497). "In addition, because disgorgement of profits is an equitable remedy, the district court must weigh principles of equity before awarding disgorged profits." *Klein-Becker USA*, 711 F.3d at 1161 (citation and quotation marks omitted).

Plaintiff appears to base its entitlement of disgorged profits on Defendant's willfulness rather than actual damages. *See* Mot. at 23 (stating that "Poulin has elected to forego recovery of the damages it has directly sustained" and instead requesting disgorgement of profits based on Defendant's "willful infringement."). "[T]he willfulness required for a disgorgement award is the intent to benefit from the goodwill or reputation of the trademark holder." *Klein-Becker USA*, 711 F.3d at 1162 (citation and quotation marks omitted). "Deliberate adoption of two similar marks can give rise to an inference that [the defendant] intended to benefit from [the plaintiff's] goodwill." *Ibid*. (quotation marks omitted, alteration in original).

17

Here, Defendant has admitted that it has "been using the name LADYBOSS as a trademark that is identical to Poulin's mark;" that "Defendant[ and Ms. Mitchell] have offered and/or are offering identical goods as those offered by Poulin – namely women's eyewear through an online retail store of the same name – while using Poulin's marks …" and that Defendant has used Plaintiff's marks "with the intent to profit by trading on Poulin's goodwill." Compl. ¶¶ 18, 21, 25. These admitted facts are sufficient to support the inference that Defendant acted willfully and in bad faith and that Plaintiff is entitled to the remedy of disgorgement of Defendant's profits.

Equitable considerations warrant disgorgement of profits. *See Klein-Becker USA*, 711 F.3d at 1162 ("before awarding disgorgement of profits, courts must also weigh the equities to fashion a remedy that matches the harm.") Defendant admits that it has used, in an intentional and willful manner, the name "LADYBOSS as a trademark that is identical" to Plaintiff's mark, in order to "trade[ ] on Poulin's goodwill," and "cause confusion or mistake, or deceive purchasers." Compl. ¶¶ 18, 25, 28. *See Klein-Becker USA*, 711 F.3d at 1162 (concluding that the equitable factors, including the plaintiff's lost sales, the defendant's benefitting from the plaintiff's goodwill, and the defendant's deception of customers supported awarding disgorgement of the defendant's profits). The Court therefore finds that Plaintiff is entitled to a disgorgement of Defendant's profits.

The Court must now turn to a calculation of this award. Plaintiff requests $500,000. The plaintiff is required to prove with reasonable certainty defendant's sales only, while the defendant has the burden of proving all elements of cost or deduction claimed. *Klein-Becker USA*, 711 F.3d at 1163 (citing 15 U.S.C. § 1117(a)); *see also Otter Prod., LLC v. Wang*, No. 18-CV-03198-CMA-SKC, 2019 WL 1403022, at *8 (D. Colo. Mar. 28, 2019) ("To establish a defendant's profits, a plaintiff is required to prove only the defendant's sales; it is then the defendant's burden to submit

evidence of costs and deductions.") Courts have wide discretion to fashion appropriate equitable remedies such as disgorgement of profits. *Klein-Becker USA*, 711 F.3d at 1163.

The Court finds that Plaintiff has established with reasonable certainty Defendant's sales. Plaintiff submitted a January 2020 screenshot apparently taken from the Instagram account of Ms. Mitchell, Defendant's founder. *See* Pl.'s Ex. B, ECF No. 70-2. Ms. Mitchell posted that she made $5 million in three years after starting an online store selling sunglasses. *Ibid*. The post then transitions to a spreadsheet, and, under the category of "net sales," the number $5,030,551.65 appears, although Ms. Mitchell referred to this figure as "net profits." *Id.* at 13. Plaintiff claims that an award of $500,000 "charitably represent[s] less than 1/10th of Defendant's … admitted $5,030,551.65 in net profit." Mot. at 23.

The Court finds that Plaintiff's proffer is sufficient to establish Defendant's sales. Although a social media posting by Ms. Mitchell about her company's sales may seem questionable when compared to an invoice or underlying business record of Defendant's sales, courts have held that such public statements carry evidentiary weight when assessing a defaulting defendant's profits. *See Mantra Band, LLC v. Ozpar Pty Ltd*, No. SACV1900197JVSADSX, 2020 WL 5163567, at *4 (C.D. Cal. June 4, 2020) (defaulting company's founder's "personal website in which she state[d] that her company ha[d] reached $1,000,000 in revenue," and a news article in which the company projected earnings of over $3,000,000 annually "carr[ied] evidentiary weight" because the allegations regarding the company's profits were based upon its founder's "public statements[.]") Because Plaintiff must only establish Defendant's sales, the Court finds that Ms. Mitchell's statements on social media is sufficient to establish that Defendant's sales exceed $5 million.

Having proven Defendant's sales, the burden shifts to Defendant to present evidence of costs or deductions. But because Defendant defaulted, it presented no evidence of costs or other deductions that would reduce the amount of profits that Defendant made from selling infringing products. Accordingly, the Court finds that Plaintiff is entitled to recover $500,000 from Defendant.

## C. Attorneys' Fees

Plaintiff seeks $110,541.07 in attorneys' fees. "Under the Lanham Act, a court is allowed to award attorney fees and costs if the defendant's actions make the case an 'exceptional case of infringement.'" *Builders Tr. of New Mexico*, 2010 WL 11597294, at *6 (quoting 15 U.S.C. § 1117(a)). "Although no one factor is dispositive, a case may be deemed exceptional because of (1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well." *King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 592 (10th Cir. 2007) (citation and quotation marks omitted); *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1246 (10th Cir. 2021). "In more general terms, [a court] look[s] to both the objective strength of a plaintiffs [sic] Lanham Act claim and the plaintiff's subjective motivations." *King*, 485 F.3d at 592.

The Court finds that, under the totality of the circumstances, this case is exceptional and an award of attorneys' fees is reasonable to deter further infringement upon Plaintiff's LadyBoss Marks by Defendant. As noted, Defendant admits the complaint's allegations that it intentionally and willfully infringed on Plaintiff's LadyBoss Marks to confuse and deceive customers. Therefore, Defendant's violations are deemed willful and thus constitute exceptional circumstances. In addition, since Defendant has failed to participate, plead, or comply with the orders of this Court, an award of reasonable attorneys' fees is appropriate. *See CrossFit, Inc. v.*

*Jenkins*, 69 F. Supp. 3d 1088, 1104 (D. Colo. 2014) (holding that a defendant's "failure to appear in this action further demonstrates the exceptional nature of this case and the propriety of awarding attorney's fees …."); *Builders Tr. of New Mexico*, 2010 WL 11597294, at *6 (same).

The Court concludes that the requested attorneys' fees are reasonable. The Court has reviewed the evidence in support of Plaintiff's request for attorneys' fees, including Ms. Susan B. Meyer's declaration and her law firm's billing compilation. Those submissions establish that Plaintiff's fees are properly calculated by multiplying the hours Plaintiff's counsel reasonably spent on the litigation by a reasonably hourly rate. *See Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). Having reviewed Plaintiff's submissions and analyzed the requested amount pursuant to *Case*, the Court concludes that $110,541.07 is a reasonable figure. Thus, Plaintiff is awarded $110,541.07 in attorneys' fees.

**D. Costs**

Plaintiff seeks $727.49 in costs incurred in connection with a filing fee, court delivery expenses, and the cost of serving process on Defendant pursuant to Fed. R. Civ. P. 54(d)(1). Mot. at 28. The Court finds Plaintiff's request for costs appropriate given that 15 U.S.C. § 1117(a) entitles the plaintiff to an award of costs. The Court therefore awards Plaintiff $729.49 in costs pursuant to Fed. R. Civ. P. 54(d)(1) and 15 U.S.C. § 1117(a).

**CONCLUSION**

**IT IS THEREFORE ORDERED that** Plaintiff Poulin Ventures LLC's Renewed Motion for Default Judgment Against Defendant MoneyBunny Co., LLC and Incorporated Memorandum in Support **(ECF No. 70)** is **GRANTED in part** and **DENIED in part**. Specifically, Plaintiff's

request for default judgment on Count 4 of the complaint under the New Mexico's Unfair Trade Practices Act, N.M. Stat. Ann., §§ 57-12-1, *et seq*. is **DENIED**. The balance of Plaintiff's requested relief is **GRANTED**;

       **IT IS FURTHER ORDERED that** within **7 days** of entry of this Memorandum Opinion and Order, Plaintiff will submit a revised, updated proposed judgment and order of injunction, *see* ECF No. 70-3, which conforms to this Memorandum Opinion and Order and incorporates Plaintiff's additional requested relief described in its supplemental brief (ECF No. 73), in which Plaintiff requests an order transferring a domain name and certain Instagram handles.

       **IT IS SO ORDERED**.


SENIOR UNITED STATES DISTRICT JUDGE